P. H. PETRY CO. *v.* UNITED STATES

**No. 5547.**—Invoices dated Radomsko, Poland, May 28, 1937, etc.
Certified June 11, 1937, etc.
Entered at New York, June 26, 1937, etc.
Entry No. 79554, etc.

(Decided January 8, 1942)

*Puckhafer, Rode and Rode* (*John D. Rode* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Daniel 1. Auster,* special attorney), for the defendant.

WALKER, Judge: These are appeals filed on behalf of the importers under the provisions of section 501 of the Tariff Act of 1930 from appraisements made by the United States appraiser at the port of New York on certain bentwood chairs exported from Poland during the period from May to July of the year 1937.

The merchandise was appraised on the basis of foreign-market values and there is no dispute that such values, as it was defined in section 402 (c) of the Tariff Act of 1930 at the time of importation was the correct basis of value, but it is claimed by the importers that the entered values, which are lower than the appraised values, represent the true foreign value.

The case on behalf of the importers largely rests upon the oral testimony given by two witnesses. The first of these, Adolf Grumbaum, stated that during the year in which the importations in issue were made he was the sole agent in the United States for Mazowia of Radomsko, Poland, the manufacturer and exporter. Some effort was made to show that the witness was familiar with the market value in Poland of bentwood chairs for home consumption, but the witness himself admitted that he had no special interest in finding out the home market price. He stated, however, that besides receiving orders for bentwood chairs in the United States for transmittal to Mazowia, he also received orders from Canada and some of the South American countries for merchandise to be exported from Poland by Mazowia to those countries, and it appears that where the orders were not transmitted through him he received copies thereof.

He then testified as follows:

R. Q. Do you know of your own knowledge how those prices for exportation to Canada compared with the prices for those shipments that came to the United States?—A. I do.

R. Q. How did they compare?—

Mr. AUSTER. I object to this unless this witness produces orders, in order to ascertain what chairs he is talking about. A mere statement would merely be his own conclusion as to similarity; and similarity is for your Honor to determine, and not for the witness.

Judge WALKER. I think the question is admissible. It is up to me to find out the weight.

Mr. AUSTER. Which chairs?

Mr. RODE. I am asking him generally. "How did they compare?" is the question asked.

Judge WALKER. Objection overruled.

A. Prices to Canada were made c. i. f., delivered in Canada. Checking the through cost of transportation resulted in the same export price as to the United States.

The second witness was John H. Stilberg, who identified himself as having been export manager and secretary to the president of the exporting firm during the time the shipments in question had been made. Concerning sales to Canadian purchasers Mr. Stilberg testified:

Q. Would Canada be one of their principal overseas markets?—A. I cannot say principal.

Q. Well, was it a substantial market? A. We don't do much business in Canada; only one or two shipments, because the market was just being developed.

Q. Did Mazowia sell chairs similar to those involved herein to Canada in 1937? —A. Yes, I think it was one or two shipments. I can't remember.

Q. Do you recollect how those prices compared with the prices on these invoices? By "these invoices" I mean the cases we are trying this morning. —A. Yes, I recollect, because I made out the prices myself.

Q. How did they compare? * * *—A. They were about the same. Furthermore, we sell to Canada on the c. i. f. basis, the freight and packing are included. These, I should say frankly, it was a small lot. Generally, the basis would be the same, the prices would be the same.

Concerning sales for home consumption the witness testified that there was an agreement among bentwood chair manufacturers in Poland fixing prices so as to avoid underselling, but it is noted that under the agreement "everybody was allowed to charge higher, but the minimum prices were the same," and there is no showing that the agreed prices for home consumption were in any way related to the entered values in the cases at bar.

The witness produced three invoices which he stated represented sales to customers in the home market for home consumption. On only one of these was he able to find an item which corresponded to one of the items on the invoices before me, viz, item 772 covered by reappraisement 133768-A. Over objection of counsel for the defendant the invoices were admitted in evidence as collective exhibit 1. The invoice on which item 772 appears is dated September 20, 1937, made out to Josef Zawadski, of Cacstochowa, and is entirely in the Polish language. The witness was able to translate only the line of the invoice on which item 772 appears, as follows: "One armchair with frame No. 772, walnut color, plain seat, price 9.50 zloty." He also stated that that price was net, including packing; that the usual wholesale quantity of that style for home consumption was from 1 to 60 chairs or more, and that the price would be the same whether 1 or 60 chairs were purchased. To the question—

Is this the price at which your factory was offering that particular style chair, 772?

he answered, "In Poland," but later, at the close of his cross-examination, he was asked:

Do you know whether or not merchandise such as or similar to these items here involved in the three cases was freely offered for sale in Poland in 1937?

and he answered, "I don't know."

In view of world conditions and the impossibility of communicating with the country from which the merchandise at bar was exported, I appreciate the difficulties under which counsel for the plaintiff labored in the effort to prove the case of his clients. Notwithstanding this, however, the appraised values may not be overturned without every element requiring proof being established.

The evidence offered indicates that chairs such as those in issue were sold in the principal markets of Poland at the time of exportation for both home consumption and exportation to countries other than the United States. The merchandise at bar was imported prior to the passage of the Customs Administrative Act of 1938 which limited the definition of foreign value in section 402 (c) to the price at which such or similar merchandise was freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, and in that situation under the decision of the Court of Customs and Patent Appeals in the case of *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. 214, T. D. 48060,

* * * all unrestricted offers for sale * * * in the principal markets of the country from which the merchandise is exported, whether for home consumption or for export to countries other than the United States, should be considered in arriving at the foreign value of imported merchandise.

It will be noted that the evidence with relation to sales or offers for sale in the foreign market for exportation to countries other than the United States is limited to "one or two shipments" to Canada, and that as to those both witnesses testified "generally" the prices were the same as the entered prices. Even if it be conceded that this evidence established the price at which such or similar merchandise was offered for sale in the foreign market for exportation to countries other than the United States, I am of the opinion that plaintiff has nevertheless failed to establish different foreign values for the merchandise at bar from those found by the appraiser for the reason that there is no showing by competent evidence that the merchandise was not sold or freely offered for sale in the foreign market *for home consumption* at prices higher than the entered values. Witness Grumbaum was not qualified to testify concerning prices in the foreign market for home consumption, and witness Stilberg was unable to give any positive evidence as to sales for home consumption except as to item 772. As to that item, his testimony is based upon an invoice dated more than 2 months after the exportation of the last shipment of the merchandise in question, covering a transaction with which he apparently had no connection, and which he was unable fully to translate.

Counsel for the defendant moved, at the close of the testimony, to dismiss the appeals to reappraisement for failure on the part of the plaintiffs to offer proof sufficient to make out a *prima facie* case in support of their contention, citing in the brief in support of the motion *United States* v. *Gane & Ingram, Inc.*, 24 C. C. P. A. 1, T. D. 48264, among other cases.

For the reasons hereinbefore stated and on the authority of the cited case judgment will issue dismissing these appeals to reappraisement.